LLC and Off. I'm bringing forward to the podium Mr. Michael S. Pomerantz. I will also be addressing the attorneys from ours and Carlin. Mr. Pomerantz. Yes, Your Honor, thank you. Your Honor, Michael Pomerantz on behalf of the defendants' appellants. For purposes of clarity, if you don't mind, I'll refer to them throughout my argument as the gambling parties. Your Honor, we're here today to appeal Judge Whedon's rulings regarding a promissory note dated December 16, 2005. The language of that note is on the board in front of you. Hopefully you can read it. And you'll note that it makes reference four times, twice in the loan commitment and twice in the note to the fact that the interest under this note is a per annum rate. This note also contains certain interest calculation language, which is highlighted in yellow. We contend that this interest calculation language of the note is at best ambiguous in its meaning. And in any event, and regardless of your interpretation of that interest calculation language, that language simply cannot override the more specific per annum interest requirement of the note. It certainly, Your Honor, cannot, as a matter of law, alter or change the gambling party's intent and understanding by the language of this note that they would be paying a per annum interest rate. Your Honor, in the two orders that we're appealing here today, Judge Whedon concluded, and that language is also on the board for Rule No. 2, that she believes that as a matter of law, the interest rate set out in the note is a per annum rate. And that the note is proper and not the subject of an ambiguity. This method of interest computation is commonly used in commercial transactions, and she can take judicial notice of that. With all due respect, Your Honors, the problem with Judge Whedon's analysis is she took judicial notice of an incorrect fact to which no evidence was presented to the court. Did she use the same logic and rationale as the First District's decision that basically agreed with what the result was? It's difficult to say, Your Honor, because the First District gave no reasoning for their ruling. Judge Whedon did explain that she felt that there was one method of interest calculation commonly used in commercial transactions, but there isn't one method. There are three methods of interest calculation. The 365-360, the 360-360, and the 365-360. And, Your Honors, if you look at this language, the interest calculation language, you see that it makes reference to a 360-day year. But two of the methods of interest calculation use a 360-day year. And two of the methods of interest calculation come out with annual interest charges that are exactly identical to the interest charges that would be computed using a per annum interest rate. There's only one of the three commonly used methods of interest calculation, the 365-360 method, which was the method, the only method, that Judge Whedon considered. If that's all true, then why did you extend the note? Why didn't you just suggest that the note was bogus or defective and you weren't going to pay anymore? Your Honors, you know, these are difficult, difficult times. And at the point that the note was extended, the real estate market was down. Our clients were happy to extend the note and not be thrown into foreclosure at that time. These were documents drafted by the bank, and they needed to keep the loan in place. It would have been very difficult to replace the loan at that time. So you don't think that your client should be stopped from raising this argument now based upon what they did before because it's hard times? I'm not sure I understand the question. Well, the extension meant, correct me if I'm wrong, it meant that the mortgagee was not going to foreclose, correct? At that time. And so, therefore, they withheld action, which they otherwise, in ordinary circumstances, on a default would not. So based upon the reliance that this was a valid note, they refused or refrained from doing something based upon the representation that you didn't have a defense or your client didn't have a defense to this mortgage and this note. This is boilerplate language, and if you're referring to the concept of waiver. Whether it's boilerplate or not, there was an estoppel, or at least there was a refraining from doing something based upon a representation by a client that there is no defense to this claim. We're agreeing that we're going to extend the loan, et cetera, et cetera. Your Honor, under Illinois law, three of the claims that have been brought by my client are unwaivable. Unquotably. The consumer fraud cannot be waived. That's specifically set forth in the statute. That's 815 ILCS 505. And that says that any waiver or modification of the rights of the— This isn't a waiver. This is an estoppel. There's a difference between waiving something and contracting or agreeing that based upon some quid pro quo, you will refrain from raising the Consumer Fraud Act. It's not a question of waiver. Waiver means a voluntary relinquishment. It doesn't necessarily mean it's with or without consideration. No, Judge. I think just like this language that was buried in a note drafted by the bank, I think that language was also buried in an extension agreement drafted by the bank. And the question is, what are the terms of the note? I mean, I refer you to this language. It says the initial interest rate shall be a per annum rate. Per annum. Per annum. The only thing in this document that contradicts the very specific per annum requirement is this interest calculation language. What does it say? It says that interest shall be computed on the balance outstanding from time to time on the basis of a 360-day year, but shall be charged for the actual number of days elapsed within the period for which interest is being charged. It doesn't mention the number 365. Where on earth can one get the 365, 360 method of interest calculation out of that language? To the contrary, it appears to me that the number of days elapsed within the period for which interest is being charged is a 360-day year, which is defined in the immediately preceding clause. It seems to me, and it seems to the two experts whose affidavits we attached to our motion for reconsideration, that this language more appropriately should be interpreted to mean the 360-360 method of interest calculation. But again, we don't have to show that here today. Did you say 350-360? 360-360. Okay. Isn't the 365-365 calculation called the exact day interest rate? Don't these people call it the exact day interest rate? It's called many different things, Your Honor. And I think, as the Seventh Circuit explained in Amico-Cadiz, there are three generally accepted methods of interest calculation in commercial transactions. What I'm getting at is the exact day interest rate or something similar to that. Isn't that similar or the same to the actual number of days as indicated in this? Well, but you can't ignore the rest of that sentence. It's not just the actual number of days. It's the actual number of days elapsed within the period for which interest is being charged. I agree, Your Honor. I've seen notes that have been drafted properly. I've seen notes that properly spell out a 360-360 calculation. I've seen notes that properly spell out a 365-360 calculation. And I've seen them spell out the 360-360. But this language doesn't do that. An annual interest calculation requires two numbers, a numerator and a denominator. This has one number, 360. That must be the numerator and the denominator. There's no other number set for it. Your clients are sophisticated business people, correct? We're not talking about, you know, unsophisticated business people. They are, Your Honor. And they weren't completely taken by surprise by this ambiguous contract. Absolutely. And, Your Honor, if you look at your loan statement for this sort of thing, the 365-360 versus the 360-360, you're talking about five days of interest a year. This is part of our whole theory in this case. We attached a law review article from the University of South Carolina explaining how this amounts to billions of dollars a year in interest charges to the bank. If the bank, instead of putting in the 365-360 method in the interest calculation provision in the note, contrary to the per annum rate, put in a 365-150, it would be obvious to everyone. You'd get your interest statement, and you'd see that the interest you were paying was double. The fact that they only do it for five days is all part of the fraud. It's a de minimis amount. It's an amount that people who look at their monthly loan statements don't necessarily notice, sophisticated or not. I mean, we've had now what appears to be five judges who have looked at this, Judge Wheaton, Judge DeLorte, Justice Lavin, and his panel mates, and have all decided opposite what you're indicating here. Well, Judge, there have been lots of other judges that have looked at this and come out the other way. There's the Kitson case. There's the Patterson case. There's the Amakokides case. There's the Eli case, which is an Ohio appellate court case. And more recently, on January 19, 2011, in the First District Court, a ruling was also found that based upon almost this exact language, that this language, which makes reference only to the number 360, in no way connotes the 365-360 method. That's PNC v. Matson, Tennessee. Your opponent has cited Perlman, Martin, Kleiner, Cadillac, Wildwood, for the proposition that this per annum can also be seen as 365-360. I don't disagree, Your Honor, that if the 365-360 method is clearly and unequivocally laid out in the loan instrument, that it's acceptable. In Illinois, commercial banks and commercial borrowers can agree upon any rate they like, but it has to be spelled out. It can't be contradictory. And in many of those cases I just cited to you, where they lay out with great particularity the 365-360 method, use both numbers, explain how it's calculated. You take the annual interest, divide it by this number, multiply it by this number. Great particularity. Those courts still held that, nonetheless, that language, that very particular language, can't override the very specific per annum requirement. In this case, we don't have any language that overrides the per annum requirement. Are you suggesting that all three forms of calculation do not comport with the term per annum? That's correct, Your Honor. I would argue that the 360-360 method is a per annum rate. So in my understanding, your understanding of per annum means that once a year, on the date that the mortgage note was signed, the principal times the rate is the amount of money that is owed on the note, and it's payable only once a year. There is no prorated determination or calculation. That's your understanding of per annum? That is not correct. Well, then what is your understanding of per annum? Per annum is one, Your Honor, one year. Whether it's 365 over 365 or 360 over 360, it comes out to one for the year. 365-360 adds five or six days on to a year. The history of this is laid out in the Amoco-Cadiz case, but very simply, loans started out using the 365-365 method. The banks took the annual interest, divided it by 365. So is your position that 365 over 365 or 360 over 360 is the equivalent of per annum, but 365 over 360 isn't or 360 over 365 isn't? That's correct, Your Honor. Or 359 over 670 isn't? That's correct. Per annum is one. The one is one year. The numerator and the denominator have to match. If they don't match, you're either overcharging interest or undercharging interest. Of course the banks are undercharging interest. And if they're overcharging interest, you're claiming that this was a consumer fraud on your clients as well? The main thing we're saying, Your Honor, and the thing that we have said all along, is that this specific per annum interest rate in this note cannot be overridden, and vitiated by this vague, amorphous interest calculation language. Per annum is specific. It's very clear. It's not subject to interpretation. This other language, which mentions only the number 360, can be subject to several different interpretations. I don't see how it means 365, 360, but it's clearly not clear. And we've cited some other cases for Your Honors. Thomas v. Gordon, which is an Illinois Supreme Court case from 2011. Gallagher v. Lennart, another Illinois Supreme Court case, which say that a court will not interpret a contract in a manner that would nullify or render other provisions meaningless. How can you interpret this note, this column for the 365, 360 method, without entirely vitiating the per annum requirement? They're just inconsistent. So even if you found that language to be unambiguous, somehow, meaning the 365, 360 method, you would still have an internal inconsistency within the document. You'd have a per annum requirement on the one hand and a calculation method which conflicted with each other. The per annum requirement is clear. And that's what all those other cases held, by the way, that I cited. In those cases, it was clear. This case is a much weaker case than the other cases we've cited. In those cases, they specifically spelled out the 365, 360 method. Any other questions? Just one quick one. You initially argued, I thought, on the trial court, 365, 365 was what applied. And then you switched over on your motion to reconsider to a 360, 360, which leads me to, you know, at least might lead your opponent to the argument that you were looking initially for the 365, 365 at the language in the document, actual number of days. And you knew that that meant 365 because it talked about the actual number of days. Your Honor, it's a very interesting observation. So let me answer that question. Our allegation has always been that this big and ambiguous interest calculation language cannot override the specific per annum rate. That was our argument in the answer from the defenses and counterclaims. That was our argument in response to the motion to dismiss. And that was our argument on the motion to reconsider. That's never changed. I agree with you that our law firm initial interpretation of that language because of the definition of year in other Illinois statutes was that it could mean the 365, 360 method. But when Judge Wheaton threw us a loop, remember, we didn't even get into the ambiguity of what that language meant on the motion to dismiss. On the motion to dismiss, we simply said that the per annum requirement is unambiguous. This other language, I don't know what it means, but it certainly can't override the very specific per annum interest requirement. Then when Judge Wheaton took us by surprise and said, not only is that language not ambiguous, even though it nowhere mentions the 365, it unequivocally, as a matter of law, without allowing it to go to the trier of fact, means the 365, 360 method, we were absolutely floored. And that's why in our motion to reconsider, we actually consulted with experts, a professor at Northwestern, a banker with over 20 years experience, and we asked them, what do they think that language means? And they both said that they think that language is either ambiguous or means 360, 360. Your question simply points out the ambiguity in this language. I agree with you. We initially looked at other statutes defining a year as 365 days and said that per annum means 365 over 365. When we consulted with experts after the initial ruling on the motion to dismiss, who found this language to more appropriately mean 360, 360, we brought that to this court's attention. But either way, it's ambiguous. 365 over 365 is one. 360 over 360 is one. They're both per annum. That's the whole point of this case. Per annum in this note is unequivocal. That's what's required under this note. That's how the interest has to be calculated. So whether you use 365, 365, or 360, 360, you come out with the same number, the same annual interest charges. So, yeah, it's ambiguous. And there have been different positions, and I hope I've explained the reason that we came to that conclusion. Thank you, sir. Your time is up. Thank you, Mr. Chief. Thank you. Exactly the same argument put down that you're making here. It's very similar, Your Honor. Very similar. And, again, I'm happy to talk about the first decision. I'm asking, whatever decision comes down from the Supreme Court on the Clark County case, would it be very judicata in this case if your argument is exactly the same? It's not exactly the same. There are a few differences. These are two properties that were cross-collateralized, and there were two different notes at issue. But with regard to this particular note, we have argued the same thing. The First District found the language to be ambiguous. They gave zero reasoning for doing so. And, by the way, Your Honor, if you look here at the First District ruling, they misquote even the language of the interest calculation. They say that it says that interest will be charged based on the number of actual days that occur. What it actually says is the actual number of days that last within the period for which interest is being charged, which is, again, defined by the bank in the document that they drafted as 360 days. So that's a quote from the First District appellate ruling. And, again, it misquotes the language of the note.  Thank you, Your Honor. Mr. Carlin. Thank you. Your Honor's counsel, may it please the Court. My name is Lawrence Carlin, and I represent RBS Citizens Bank. An issue before the Court is a claim in defense that has been raised in numerous cases and rejected virtually all of them that have issued reasoned opinions. I discount Kitson cases like that, an unreported one-page order. But if you look at the First District's opinion, you look at Judge St. Eve's opinion, there was also a case that Mr. Pomerantz argued. The very arguments that have been asserted here have been rejected there from the beginning to the end. The essence of the argument presented today by Mr. Pomerantz is completely different than the essence of the argument that was originally presented and rejected by both Judge DeLoy in Cook County and Judge Wheaton in DuPage County. He is now saying that the specific language, this word, per annum, has magic and universally understood meaning. That it means 1 over 1, it means 360 or 365 over 365, but it can't mean the 365, 360 method. He says, and that magic word overrides the terms of the note, which they don't represent correctly on this board because that's the second sentence. There's a sentence that comes before that, and I'll get to that. But somehow, that specific per annum language overrides the language, the vague language in the note that says exactly how the interest is to be calculated. The reason that argument is fallacious is because per annum doesn't have a specific and defined meaning. Courts have struggled with it mightily over the years. I believe some courts agree with Mr. Pomerantz. Most courts do not. Would you agree with Mr. Pomerantz that the word per annum relates to the Gregorian calendar? It relates to by the year. And whether commercially sophisticated parties can define a year, that's fine. It means that the interest is calculated on a per diem rate that is based on a calculation over a year. I give them that. But what is interesting is that initially coming out of the box, and it begins in their response to the 2619 motion, which is filed on December 14th and appears at the record at C90 or C87. They were very clear. Per annum mandates a 365-day calculation. They repeated 14 times in their opening brief that the Overly Interest Act defines per annum as a 365-day calculation. The language that they're now saying is vague and ambiguous and doesn't mention the 365, 360 method is not what they said in their opening brief. And I'm quoting from page C100 of the record. They just finished in their brief discussing why Section 10 of the Interest Act mandates that per annum be defined as 365 days and excludes any calculation based on a 360-day year. Completely contrary to what they're saying now. But they go on to say, but even if Section 10 did not so obligate the bank to use a calendar year method for calculating interest, the Royal Bank's inclusion of a, quote, per annum, end quote, rate in the note provided for a calendar year method for calculating interest, because the loan document also mentions the 365, 360 method, the loan documents therefore provide conflicting terms as to how to calculate interest. I'll repeat that. Because the loan document also mentions the 365, 360 method, the loan documents therefore provide conflicting terms on how to calculate the interest. Their argument from the beginning up to the day they lost, both in Cook County and in DuPage County, was that they recognized that the interest was calculated on the 365, 360 method. That conflicted with the word per annum, and therefore it violated some provision in the Interest Act that they could never quite settle on which one. First it was Section 9, then it was pointed out, well, gee, that doesn't apply. Then maybe it's Section 10. And ultimately they came down and violated Sections 5 and 6, I believe. There was no mention that the note could possibly be the 360, 360 method. That argument did not be asserted until reconsideration. The First District, correctly, found that the argument was forfeited, for the same reason that Judge Delord-Beloved found that the argument was forfeited. Arguments raised for the first time in reconsideration are not preserved for appeal. That argument has no weight here. It should be given no consideration. Their original argument was unsustainable based on the language of the note. Was that the argument throughout, or was that an alternative argument as it related to the Interest Act only? No, their argument, oh, I apologize. And then they switched to an ambiguous argument as it related to fraud and good faith and fair dealing. Now, the argument throughout, from beginning to end, was per annum means 365 days. And we surreptitiously and deceptively charge interest based on a calculation on page 1, paragraph 1 of the note. Contrary to the clear negotiated per annum rate, which appears based on the word per annum appearing in the definition of applicable margin on page 9 of the note. That was the argument from the outset. The argument that is being asserted today is completely different through all three cases. Interest Act, fraud, consumer fraud, good faith. All those were completely different legal basis for their arguments. All had been waived for purposes of appeal. Well, you just, you said forfeited, now you're saying waived. Are you getting sloppy in your verbiage, or do you actually mean a voluntary relinquishment? I apologize. They forfeited, they didn't preserve the argument for purposes of appeal. Pellet courts routinely use that word, and perhaps that's why, you know, I slipped into that same argument, but failing to raise it below. The waiver was used equivalent with forfeiture, and they aren't exactly the same thing. It's my position that the argument is waived by failing to raise it in the first go around. That is, they gave up that because they were obligated to bring every argument they had before the court. Mr. Comrance argued that he couldn't, or his client couldn't waive the Consumer Fraud Act. The Consumer Fraud Act is interesting. I agree. We're now talking the difference between procedural waiver and contractual waiver. The Pellet Court in the First District applied both. They said that the Interest Act argument was procedurally waived. The fraud argument was contractually waived. Good faith and consumer fraud cannot be contractually waived, and therefore they went to the merits of the underlying language of the note to address those two issues. And I agree with that. Consumer fraud cannot be contractually waived. There's a difference between that and estoppel, however, as Your Honor has pointed out, and we've cited a case in our brief that says, you know, once you agree that I have no defenses, you did this with an army of lawyers behind you. You acknowledged what the exact principal balance in the accrued interest on the loan was as of the date that we granted you a forbearance of an additional six months, and now you want to take that back? The classic elements of estoppel are that you make a representation. I rely. It's my reliance that precludes you from asserting that defense that was available to you against me. It's not waiver. It's preclusion, and it's done because of the quid pro quo. You made a representation. I relied. Certainly, estoppel applies to the consumer fraud case, and it would apply to, I don't believe, to the good faith, but there's no basis for the good faith argument. The good faith argument is based on the fact that they charge interest based on a formula and a note in accordance with the manner the formula is written. Well, the crux of the case appears to be whether or not that interest calculation provision is ambiguous or not in light of the entirety of the note. You know, the fraud in good faith would be whether it's intentionally ambiguous, I guess. Five judges, apparently, two judges and three justices have found that it's not ambiguous. I'd like to address that. The sentence that is left off of paragraph B on their board is the first sentence of the note, which says, Interest on the outstanding principal amount of the loan shall accrue during the capital I interest, capital P period, applicable thereto, at a rate equal to the sum of the LIBOR rate, capital L, capital R, and such capital I interest, capital P period, plus the capital A applicable capital M margin. Defined terms. Page 9 of the note contains the definitions. The interest period is defined in the paragraph immediately below the definition of the applicable capital M margin where the magic per annum language appears. And it states that the interest period begins on the date concurrent with the anniversary of the first disbursement, which is the 16th of the month, and runs to the last day of the month prior to the commencement of the next interest period. So interest would run from the 16th to the 15th, 16th to the 15th. In our brief, citing to the page of the record of Mr. Donovan's affidavit in support of summary judgment, we laid out exactly how interest was calculated underneath that formula. The period from January to the 16th to February 15th has 31 days in the interest period. They calculate a per annum rate based on a 360-day year, and they charge it for the actual number of days in the interest period, 31. 365 number of factors into that calculation. This language is not only not ambiguous, it is the definition of another defined term within paragraph 1, LIBOR rate. LIBOR rate, by definition, is calculated exactly this way. We have set out the language from the LIBOR Association's website that says exactly how it's done. You start with the LIBOR rate. You multiply that by the principal balance to come out with an interest. You divide that by 360. You come out with a per diem. You multiply that by the number of days within the interest period. January 16th to February, 31 days. February 16th to March 15th, 28 is the last multiple. You get into the next month, it's 30. The next month, it's 31. If it goes a whole year, it would be 365. If it goes a whole year, it would never be 365 because interest is charged each month because the LIBOR rate changes each day. LIBOR rate goes up and down like a commodity each day. On the anniversary date, 16th, they say, this is what the LIBOR rate was on that date. This is what we're going to charge you for the last 31 days because that was the interest period. And they run it again until the end of the next interest period, which is the 15th of the next month. And they say, all right, this month has 30 interest. What I'm getting at is that the three types of interest calculations that we've been talking about, that we've read about, is the 360, 360, you know, those three. This one would be the 360, 365. It would be the 360, 365 method, which is the moniker given to it, but really doesn't define at all how it's operating. There's this fiction in their brief that the bank surreptitiously and deceptively uses two different definitions of a year. The mere fact that someone calls this the 365, 360 method to distinguish it from the 360, 360 or 365, 365 method doesn't reflect on how the formula actually operates. That reflects how the formula operates. That's the language that was in the note. There was a single note in the Cook County case and the DuPage case. They're cross-collateralized against the same note. I'm running out of time. There's one thing that the court did in its last order that you wanted to discuss as well, the first district's opinion. One thing that I think has to be discussed is whether that opinion has conclusive effect on this court. And I think that's something that seriously has to be considered. It is not only the same argument. It is the same case under the River Park versus City of Highland Park transactional test. The case that was presented here is the same case that was presented in the Cook County case. It involves the identity of parties. It involves the identity of the cause of action. Our position is that that first district case is binding on this court. It's a final adjudication on the merits of the very point that stand before this court. Do you have any further questions? Otherwise, I defer to counsel. I don't have any questions. Thank you. Mr. Pomerantz. Thank you, Your Honor. Your Honor, I want to point out another thing that's never been raised in any of these cases. Counsel went through great lengths to explain this interest period, this defining term in the note in Annex A, that talks in great detail, he says, about how you calculate the interest under this note. I want you to look at this language. Interest shall be computed on the principal and blah, blah, blah. It doesn't say interest period. They drafted the note. If this was referring to an interest period, why doesn't it say interest period? It's just another ambiguity. This is ambiguous language. And, Your Honor, again, our position has never changed. Our position has never been that this note calls for 365-365 or it calls for 360-360. These were different theories as to how this language could be interpreted. But our theory, which has never changed, has been that this vague interest calculation language, again, which does never use the term interest period, that is the section that allegedly spells it out, cannot override the very specific per annum right. That's been our argument that has never changed. I can give you numerous sites to our briefs. We raise it in our answer affirmative defenses and counterclaim. We raise it in our response to the motion to dismiss. And we raise it in this appeal. If Your Honor would like me to pause. How is the period for which interest is being charged not the interest period? To me, Your Honor, what that means, they define the period for which interest is being charged as a 360-day year. That is the period for which interest is being charged. The word but is in there. It says it shall be computed based on a 360-day year, but, comma, but, the word but just means something, shall be charged for the period which interest is being charged. And the sentence before that actually has the term interest period in there. The sentence isn't up there, but actually has the term interest period in there in capital letters. Well, but again, interest period, Your Honor, doesn't have anything. It's not in the interest calculation sentence. Again, if you step back and view our theory accurately, this is a per annum note which calls for a per annum interest calculation, which means whatever numbers you use, 365 over 360, 360 over 360, 1 over 1, it has to equal 1. That 1 is a year. If it comes out to anything over a year, if it comes out to 1.1, it's more than a year's interest. And are you prepared to say that based upon that language, that unambiguously as a matter of law, that calls for the 365-360 method? Where does it say 365? How do you get 365-360 out of that language? I just don't see it. And that's been our theory, and that theory has been accepted, again, by five courts that I cited to, and the reason we're before you and we appreciate your accepting this oral argument, which the First District did not, is because if you read this language and you cannot say, but you have to say two things, by the way. Number one, you have to say that this interest calculation language is unambiguous, even though it never mentions the word 365. Two, you have to say that it unequivocally, as a matter of law, despite our opinion, despite expert affidavits, despite other opinions as to what it means, you have to say that as a matter of law, without going to the trier of fact, it means the 365-360 method. And then you have to reach a third conclusion, that if it's unambiguous and if it calls for the 365-360 method, then that language, for some reason, also overrides the per annum requirement. Those are the three findings you would have to make to affirm Judge Wheaton's ruling here. And I don't think those can be made. If it's ambiguous, if it's susceptible to more than one meaning, our initial inclination, the way statute's defining here, the question with interest period versus interest shall be computed, those all show the ambiguity. If it's susceptible to more than one meaning, under Illinois law, it has to be deemed ambiguous, and it has to go back to the trial court for the determination as to what that language means. And even if it means 365-360, if it can override the per annum requirement. And by the way, Your Honor, counsel spoke also at great length about the LIBOR rate, and it's a daily rate, et cetera, et cetera. That's also a vague term. You know, there are numerous LIBOR rates throughout the country of banks' use. There's a daily LIBOR rate, there's a monthly LIBOR rate, there's a yearly LIBOR rate. Once again, if this is all confusing to you, I have to tell you it was confusing to me initially. We've tried to figure out what that language means, and we can't figure it out. But we know what per annum means. Per annum means by the year. And that vague language can't override the very specific language. Just out of curiosity, how often or when was the bill or when was the principal and interest payment supposed to be scheduled to be made? On the first of the month, the anniversary, 16th of the month, as Mr. Carlin suggested, when was the payment due? Well, Judge, to figure that out, you have to go to this interest period definition in Annex A. Again, interest period is not mentioned in this definition, which if the bank who drafted the loan doc wanted that to be what they were referring to, they should have used their own defined term. But what they say is that the period commencing on the date of closing and ending on the numerically corresponding date one month later. So it closed on December 16th, 2005. Therefore, each one month later, the next 15th of the month would be the date. Again, not under the interest calculation language section, but under the definition of interest period, which is not incorporated into this. Any other questions? Thank you. We will take a case under advisement and have a short recess.